**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

| | | |
|---|---|---|
| LORI C. BRATCHER, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | CAUSE NO.: 2:17-CV-380-JEM |
| | ) | |
| NANCY A. BERRYHILL, | ) | |
| Deputy Commissioner for Operations, | ) | |
| Social Security Administration, | ) | |
|     Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Lori Bratcher on September 27, 2017, and Plaintiff's Opening Brief [DE 15], filed March 12, 2018. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On April 12, 2018, the Commissioner filed a response, and on May 7, 2018, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

**I.    Background**

In December 2013, Plaintiff filed an application for benefits alleging that she became disabled on August 31, 2011. Plaintiff's application was denied initially and upon reconsideration. On August 11, 2016, Administrative Law Judge ("ALJ") Shane McGovern held a hearing at which Plaintiff, with an attorney, and a vocational expert ("VE") testified. On September 28, 2016, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1.    The claimant last met the insured status of the Social Security Act through December 31, 2015.

2.    The claimant did not engage in substantial gainful activity during the period

1

from her amended onset date of September 18, 2012, through her date last insured of December 31, 2015.

3. Through the date last insured, the claimant had the severe impairments: morbid obesity, major depressive disorder, generalized anxiety disorder, social phobia, and a spinal disorder.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that meet or medically equal the severity of one the listed impairments in 20 CFR 404, Subpart P, Appendix 1.

5. Through the date last insured, the claimant had the residual functional capacity to perform light work, except: the claimant could never climb ladders, ropes, or scaffolds; was limited to occasional climbing of ramps and stairs and occasional balancing, stooping, crouching, kneeling, and crawling. The claimant could have no exposure to unprotected heights or moving mechanical parts, and needed to avoid more than occasional exposure to irritants, such as fumes, odors, dusts, gases, or poorly ventilated areas. The claimant was limited to simple, routine, and repetitive tasks free of production rate pace. The claimant was limited to low stress jobs, defined as not requiring her to cope with work-related circumstances that could be dangerous to the worker or others; she was never to have any interaction with the public, but was capable of up to occasional interaction with coworkers and supervisors.

6. The claimant was unable to perform past relevant work.

7. The claimant was 34 years old, defined as a younger individual age 18-49, on the date last insured.

8. The claimant has at least a high school education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because the claimant is "not disabled," whether or not she has transferable job skills.

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11. The claimant was not under a disability, as defined in the Social Security Act, from August 31, 2011, the alleged onset date, through December 31,

2015, the date last insured.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II.     Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses

3

the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence in order to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

### III. Analysis

Plaintiff argues that the ALJ erred in failing to give controlling weight to the opinion of Plaintiff's treating psychiatrist and in failing to adequately explain the weight given to the opinion of the consulting psychologist. The Commissioner argues that the ALJ's findings are supported by

4

substantial evidence.

Plaintiff's treating psychiatrist completed assessments of her mental ability to perform work-related tasks and opined that her mental conditions, for which she has been treated since age 9, "severely limit[] her functional capacity and ability to have gainful employment" to the extent that "[h]er future prospect of securing gainful employment is virtually zero given the chronicity and severity of her symptoms." AR 691; *see also* AR 699 (similar). The ALJ gave "very little weight" to his opinion on the grounds that "contemporaneous clinical records are unsupportive" of his statements. He cited to a medical appointment at which "the claimant was documented as pleasant and normal as to mood, affect, and judgment" and a report from an emergency visit for acute abdominal pain that he characterized as "indicat[ing] 'intact mental status.'"

"[A] judge should give controlling weight to the treating physician's opinion as long as it is supported by medical findings and consistent with substantial evidence in the record. *Kaminski v. Berryhill*, 894 F.3d 870, 874 (7th Cir. 2018) (citing 20 C.F.R. § 404.1527(c)(2); *Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018)); *see also Gudgel*, 345 F.3d at 470; *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). If the ALJ declines to give a treating source's opinion controlling weight, he must still determine what weight to give it according to the following factors: the length, nature, and extent of the physician's treatment relationship with the claimant; whether the physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; whether the physician specializes in the medical conditions at issue; and other factors, such as the amount of understanding of the disability programs and their evidentiary requirements or the extent to which an acceptable medical source is familiar with other information in the claimant's case. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(6). Furthermore, "whenever an ALJ does reject a

5

treating source's opinion, a sound explanation must be given for that decision." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011).

The ALJ did not give controlling weight to the opinion of Plaintiff's treating psychiatrist, and the only supposedly inconsistent opinions he identified were notes from physicians treating her for completely unrelated physical difficulties. Rather than rely on these opinions of Plaintiff's long-term treating psychiatrist, he afforded "great weight" to the opinions of two psychiatric consultants. Both of them were provided more than two hears prior to the hearing without the benefit of recent medical records, including what Plaintiff alleges is documentation of severe regression in Plaintiff's functioning. Furthermore, one of those consultants opined that Plaintiff's impairments met the requirements of Listing 12.06(C); however, that part of the assessment was granted little weight by the ALJ because "there was a substantial lack of specific reasoning as to said opinion supplied within said assessment." Although medical evidence "may be discounted if it is internally inconsistent or inconsistent with other evidence," *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995) (citing 20 C.F.R. § 404.1527(c)) (other citations omitted), the ALJ "must provide a 'logical bridge' between the evidence and his conclusions." *O'Connor-Spinner*, 627 F.3d at 618. The ALJ failed to build that logical bridge in this case, leaving the Court unable to follow the reasoning behind the ALJ's conclusion that the opinion of Plaintiff's treating psychiatrist is unsupported by other evidence in the record, particularly since one of the consulting psychiatrists on which the ALJ purports to rely concluded that she met the requirements of a disabling conditions. This failure particularly concerning given the importance of treating physician opinions on issues of residual functional capacity. *See, e.g,. Hamilton v. Colvin*, 525 F. App'x 433, 439 (7th Cir. 2013) ("While the ALJ is right that the ultimate question of disability is reserved to the Commissioner, a treating

6

physician's opinion that a claimant is disabled 'must not be disregarded.'") (quoting SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996)) (citing 20 C.F.R. § 416.927(e)(2)); *Roddy*, 705 F.3d at 636 ("Even though the ALJ was not required to give [the treating physician]'s opinion [that the claimant could not handle a full-time job] controlling weight, he was required to provide a sound explanation for his decision to reject it."); *Punzio*, 630 F.3d at 710 (7th Cir. 2011) ("[W]henever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision."). Not only did the ALJ fail to give controlling weight to the opinion of Plaintiff's treating psychiatrist, he did not give a thorough explanation of his decision, and did not even identify the psychiatrist's specialty, let alone how that specialty or the other factors he was required to consider affected his analysis of what weight to give his opinion,

In this case, the ALJ did not identify any treating source opining about Plaintiff's mental limitations to whom he gave more than little weight and claimed to give "great weight" to the out-of-date opinions of a non-examining medical sources while discounting the portion of that opinion finding that Plaintiff met the requirements of listing. The Court is unable to trace the path of the ALJ's reasoning from the mental health evidence to his conclusion regarding Plaintiff's limitations. On remand, the ALJ is reminded of the directive to give controlling weight to the opinion of a treating specialist, particularly when that specialist directly addresses whether Plaintiff's symptoms meet the requirement for a Listing, if it is supported by other evidence, and to properly explain the weight given to the medical opinions in the record and how Plaintiff's limitations are incorporated into the RFC. The ALJ is reminded of his responsibility to create a logical bridge between the evidence and his conclusions to allow for meaningful review. *O'Connor-Spinner*, 627 F.3d at 618. In addition, the ALJ is directed to thoroughly address the medical evidence in the record, including

7

properly weighing the reports of examining physicians in accordance with the regulations, and to obtain additional information as needed. *See, e.g., Barnett*, 381 F.3d at 669 ("An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable.") (citing 20 C.F.R. § 404.1527(c)(3); SSR 96-2p, 1996 WL 374188 at *4 (July 2, 1996)); 20 C.F.R. §§ 404.1512(d)(1), 416.919(b)). The ALJ is also reminded that he must not rely on scant evidence of treatment or failure to pursue more radical treatment to discount Plaintiff's reported limitations without first making a determination about whether the perceived lack of treatment is justified and develop the record accordingly – particularly when considering whether Plaintiff's failure to seek inpatient or emergency treatment is related to her social anxiety and fear of leaving the house rather than an indication her agoraphobia is not as severe as claimed. *See* SSR 16-3p, 2016 WL 1119029, *8 (Mar. 16, 2016) ("We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints. We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints."); *see also Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015) ("The administrative law judge went far outside the record when he said that if [the plaintiff] were as psychologically afflicted as [claimed], he 'would need to be institutionalized and/or have frequent inpatient treatment'—a medical conjecture that the administrative law judge was not competent to make and that was implausible to boot. The institutionalization of the mentally ill is generally reserved for persons who are suicidal, otherwise violent, demented, or (for whatever reason) incapable of taking even elementary care of themselves.") (citations omitted).

**IV.    Conclusion**

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Opening Brief [DE 15] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 14th day of February, 2019.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:    All counsel of record